In the Interest of A.S., Minor Child,

D.S., Father, Appellant.

No. 07–1710.

Court of Appeals of Iowa.

Dec. 12, 2007.

Jesse A. Macro, Jr., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathrine Miller–Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Michelle Chenoweth, Assistant County Attorney, for appellee State.

Cathleen Siebrecht, Des Moines, for appellee mother.

Rachael Seymour, Juvenile Public Defender, Des Moines, guardian ad litem for minor child.

Considered by VOGEL, P.J., and MAHAN and ZIMMER, JJ.

VOGEL, P.J.

A father appeals from the order terminating his parental rights to a son. We affirm.

## I. Background Facts and Proceedings.

David and Gail are the parents of A.S., who was born in December of 2006. In the months preceding A.S.'s birth, the parents had their parental rights with respect to five other children terminated.[1] These terminations were brought on by the parents' mental health issues, resulting in sexual abuse, and extreme physical abuse of the children. Thus, the Iowa Department of Human Services (DHS) was involved immediately when A.S. was born. An order of temporary removal was filed on January 16, 2007, and A.S. was placed in foster care. A petition alleging A.S. to be a child in need of assistance (CINA) was filed the following day, and on February 7, 2007, A.S. was adjudicated as CINA under Iowa Code sections 232.2(6)(b) and (c)(2) (2007). After the parents failed to make sufficient progress to safely parent A.S., the State filed a petition seeking to terminate David's and Gail's parental rights. Following an August 2007 hearing, the court granted the State's request. It terminated David's rights under sections 232.116(1)(d), (g), and (h). Gail consented to the termination of her rights. Only David has appealed from this order.

## II. Scope and Standards of Review.

■ We review termination orders de novo. *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991). While the district court terminated the parental rights on more than one statutory ground, we will affirm if at least one ground has been proved by clear and convincing evidence. *In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct.App.1995). Our primary concern in termination proceedings is the best interests of the child. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

## III. Claims on Appeal.

David first contends that the district court erred in determining the State established the grounds for termination under any of the sections alleged in the termination petition. Second, he asserts the termination was not in A.S.'s best interests. Third, he argues the court erroneously admitted certain evidence. Finally, he contends the State did not make reasonable efforts geared toward reunification, in particular, increased visitation.

### A. Grounds for Termination.

■ Upon our de novo review of the record, we concur in the district court's determination that David's parental rights should be terminated under section 232.116(1)(d), which requires proof that the child has been adjudicated CINA, the court previously adjudicated another child in the same family, the parent has been offered services to correct the situation leading to the adjudication, and the circumstances continue in spite of those services. The primary danger presented to A.S. was David's ongoing contact with Gail, who has historically physically, sexually, and emotionally abused her children. However, David is not without fault as he participated in some of this abuse, and stood by while Gail perpetrated other acts of abuse.

While David claims to be leading a life apart from Gail, the evidence did not bear this out. A DHS worker reported David and Gail considered their separation as a "divorce of convenience" to pave the way for David to regain custody of A.S. As the juvenile court aptly noted, "David's argument [against termination] hinges on the necessity that he convince me his plan to protect A.S. from his mother by divorcing

---

1. These five children included three of Gail's daughters from previous relationships, David's son from a previous marriage, and a son born to the couple.

her is real." The transparency of the couples' separation was noted by the court in its conclusion "that David has no intention of really separating from Gail." Like the juvenile court, we believe the evidence is clear David is having and will continue to have substantial contact with Gail. If A.S. were in David's care, any contact at all with Gail in the future would have a high likelihood of placing A.S. in physical danger. David's testimony as to his claimed separation from Gail was found to be highly suspect and simply incredible by the juvenile court. We defer to this quite specific and strong adverse credibility finding. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

### B. Best Interests.

■ We also find the termination of David's parental rights is in A.S.'s best interests. David is not able to separate himself from the woman who contributed to the termination of his parental rights to other children, and who seriously abused her own children. Despite years of services, it is apparent David is unable to place the interests of his child above his interest in continuing his relationship with Gail. Moreover, A.S. is in need of a safe and nurturing home. It appears that his foster home, where he has lived since removal, is providing him just that.

### C. Admissibility of Phone Records.

At trial, David testified generally as to his very limited contact with Gail following their purported separation. The guardian ad litem later presented impeachment evidence of David's cell phone records, which reflected his contact with Gail was much greater than David had claimed earlier in his testimony. David asserts that because notice of the subpoenaed phone records was not served on him, the records should have been excluded from trial. Iowa Rule

of Civil Procedure 1.1701(6) provides in part:

> Prior notice of any commanded production of documents . . . shall be served on each party . . . in a manner reasonably calculated to give all parties an opportunity to object before the commanded production or inspection is to occur.

■ Our Iowa Rules of Civil Procedure do not automatically apply to juvenile proceedings. *In re A.G.*, 558 N.W.2d 400, 402 (Iowa 1997) (citing *In re J.R.*, 315 N.W.2d 750, 752 (Iowa 1982)). Under Iowa Code chapter 232, Division IV, pertaining to termination of parental rights (sections 232.104 through 232.120), there is no mention of evidentiary rules to be followed. However, our case law has long held that juvenile proceedings should be conducted in an informal manner. In *Henderson*, which involved a combined dependency and delinquency proceeding under the 1972 Code, the court noted that juvenile proceedings are to be conducted so as "to provide an informal, efficient hearing with regard to the allegations of the petition." *In re Henderson*, 199 N.W.2d 111, 116, 120 (Iowa 1972); *see also, In re Hewitt*, 272 N.W.2d 852, 859 (Iowa 1978) (holding that a rule relating to special appearances for purposes of challenging jurisdiction is inapplicable to such proceeding);compare *In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994) (holding same rule applies to CINA proceedings) and *In re A.R.*, 316 N.W.2d 887, 889 (Iowa 1982) (holding former rule 179(b), now 1.904(2), applies to juvenile court termination proceedings).

Under 232.99(2) relating to dispositional hearings, "all relevant and material evidence shall be admitted." Permanency hearings under 232.104(1)(c) are to be similarly conducted. Iowa's court rules also appear to express this sentiment for informality. Iowa Court rule 8.1 expresses a

desire for "full and free" discovery in juvenile proceedings in order to protect the rights of all parties and effectuate the goals of the juvenile justice system. Rule 8.3 additionally states a preference for "informal discovery methods."

However, set against that backdrop of informality, wise policy still suggests that certain rules of procedure and evidence should be adhered to for the orderly and fair administration of CINA and termination proceedings. Iowa Code section 232.96(3), the CINA adjudicatory section, provides that "[o]nly evidence which is admissible under the rules of evidence applicable to the trial of civil cases shall be admitted, except as otherwise provided by this section." In addition, rule 8.3 provides that Iowa Rules of Civil Procedure, divisions V (Discovery and Inspection) and VII (Depositions and Perpetuating Testimony), "shall apply" to CINA and termination proceedings. Rule 1.1701(6), regarding subpoenas, resides in division XVII of the Iowa Rules of Civil Procedure, and thus is not expressly made applicable to juvenile proceedings by Iowa Court Rule 8.3. Nonetheless, subpoena power under rule 1.1701, as an instrument of discovery, should be followed in CINA and termination proceedings. Rule 1.1701 gives the parties not only the power to obtain information but also remedies, should the request be unreasonable or burdensome. Rule 1.1701(2). Fundamental fairness as well as the orderly and fair administration of justice dictates that noncompliance should result in the inadmissibility of the evidence obtained thereby.

However, even the erroneous admission of this evidence will not result in reversal unless it is prejudicial. *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 183 (Iowa 2004). Surveillance of David's home provided the district court with essentially the same information as the cell phone records. The district court found:

> Surveillance arranged for by the child's guardian ad litem establishes unequivocally that David's testimony about the amount of time he and Gail spent together after separating their households was false.... [E]ven if I do not consider the cell phone records I reach the same result. By the end of his direct and cross examination the quality of David's testimony convinced me that he was not credible.... It was so inconsistent with itself that it did not deserve serious consideration.

Given that substantial other evidence of David and Gail's apparent continuing relationship was already in the record, we find David did not suffer any prejudice from the erroneously admitted cell phone records. *See, e.g., State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (holding no prejudice would be found due to erroneously admitted hearsay where it was merely cumulative).

### D. Adequacy of Services.

Finally, we reject David's contention he was not offered reasonable services when he was denied the opportunity to have increased visitation with A.S. DHS rejected David's requests due to his ongoing contact with Gail, and their concern for A.S.'s safety. Any further unsupervised visitation may well have led to contact between A.S. and Gail, thus setting the stage for more abuse. This concern, fully justified by the past conduct of Gail as well as David, reasonably informed DHS's decision in not granting David increased visitation. As the district court concluded, David was offered a plethora of services in order to "grow into [his] responsibilities," yet he failed to do so. We affirm the termination of David's parental rights.

**AFFIRMED.**