**IN THE COURT OF APPEALS OF IOWA**

No. 22-1719
Filed January 25, 2023

**IN THE INTEREST OF R.V., Z.D., and C.S.,**
**Minor Children,**

**M.C., Father,**
        Appellant,

**A.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

Associate Juvenile Judge.


        A mother and father each appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


        Mark A. Milder, Denver, for appellant father.

        Jamie L. Schroeder of Nelson & Toenjes, Shell Rock, for appellant mother.

        Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until

withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

        Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, attorney and

guardian ad litem for minor children.


        Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

The juvenile court found that ten-year-old R.V., eight-year-old Z.D., and five-year-old C.S. were "in dire need of permanency." To that end, the court terminated the parental rights of their mother and all three fathers. Their mother, Amanda, and R.V.'s father, Montez, challenge the termination order.[1] Amanda contests the grounds for termination. She also argues that preserving her rights was in the children's best interests and the court should have applied the custody-of-a-relative exception to termination. In the alternative, she asks for six more months to achieve reunification. In his separate appeal, Montez advocates for a guardianship with R.V.'s paternal grandmother instead of termination.[2] After an independent review of the record, we are unpersuaded by the parents' arguments.[3] Thus, we affirm the termination order.

This family came to the attention of the Iowa Department of Health and Human Services in March 2021 when school staff noticed physical injuries to Z.D. At first Z.D. said he tripped on a toy. As the investigation unfolded, his older sister, R.V., revealed that their mother warned them not to tell what happened. When interviewed by child protection workers, both children disclosed that their

---

[1] The fathers of Z.D. and C.S. did not appeal.

[2] Montez also claims that the State did not prove the grounds for termination under Iowa Code section 232.116(1), paragraph (j) (2022). But he concedes termination was proper under paragraph (f) and fails to address paragraph (e). Because Montez does not dispute the statutory basis for two alternatives, we need not discuss his challenge to paragraph (j). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

[3] We review termination decisions de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.*

stepfather, Tallen, physically abused Z.D. At the removal hearing, Amanda acknowledged she could not protect or care for the children because of her depression and anxiety.

Over the next year, Amanda did not follow through with recommendations for mental-health treatment and, thwarting the court's expectation, did not obtain a substance-abuse evaluation. What's more, because of her inconsistency in attending visitation, the department decreased her sessions with the children from twice to once a week. Also concerning to the court, she was unwilling to end her relationship with Tallen despite the children's reports of his physical abuse.

As for Montez, he was never available to parent R.V. On the same day that she was born, he was arrested for first-degree murder. He is now serving a life sentence for that conviction. His only contact with R.V. has been through phone calls and an occasional prison visit.

Perceiving poor prospects for the parents to reunite with the children, the State petitioned to terminate their parental rights in April 2022. After a June trial, the juvenile court granted the petition. Amanda and Montez both appeal.

## I.     Amanda's Appeal

**Statutory Ground.**  Amanda first contends the State failed to offer clear and convincing evidence to support either paragraph (e) or (f) of Iowa Code section 232.116(1). To affirm, we need only find sufficient proof for one or the other. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We rest our decision on paragraph (f), which has four elements: (1) the children are four years of age or older; (2) they have been adjudicated as children in need of assistance; (3) they have been removed from home for the last twelve consecutive months; and (4) they cannot

be returned to the parent's care at the present time. Iowa Code § 232.116(1)(f). Amanda contests only the last element. She acknowledges her mental-health struggles, but insists that she has sought appropriate psychiatric care. Yet the department could not verify what medication the psychiatrist had prescribed and was concerned that Amanda did not follow through with recommended counseling. The juvenile court credited the department's position, we defer to that finding. *See In re A.S.*, 743 N.W.2d 865, 868 (Iowa Ct. App. 2007).

Beyond her own mental health, Amanda has not recognized the trauma suffered by the children from their stepfather's abuse. In fact, she defends Tallen and denies the abuse ever happened. Meanwhile, the children have displayed insecurities and oppositional behavior. Most affected was the middle child, Z.D., who has acted out at school and experienced night terrors. And the Court Appointed Special Advocate reported that all three children suffered emotionally from the inconsistency in visits with their mother.

In the end, we conclude that the record contains clear and convincing evidence that the children could not safely be returned to Amanda's custody at the time of the termination hearing. *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

**Best Interests/Permissive Exception.** Amanda next claims that termination was not in the best interests of the children. She contends that preserving her rights would serve their long-term welfare because the siblings, if adopted, would not be raised in the same home.[4] *See* Iowa Code § 232.116(2).

---

[4] The department planned to place R.V. in the custody of her paternal grandmother in Tennessee. Z.D. lived with a foster family who were considered a possible permanent placement. And C.S. was staying with an aunt and uncle who were considering adoption.

Under the same heading, she invokes the custody-of-a-relative exception in section 232.116(3)(a). Amanda asserts that she gets along well with the relatives where R.V. and C.S. would be placed, so the termination can be avoided. In its place, she asks us to consider guardianships for R.V. and C.S.

It's true our courts recognize the importance of keeping siblings together. *See In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021). But here, separating the siblings has been in their best interests. The department determined that Z.D. and C.S. could not be placed together because of Z.D.'s aggressive behaviors. And R.V. has conveyed that she also does not feel comfortable around Z.D. Even more important, all three children expressed that they do not feel safe in their mother's home. Under theses circumstances, termination of Amanda's rights was in their bests interests. Guardianship is not the preferred path given the toll their uncertain future has taken on these children. *In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (questioning whether guardianship with grandparents would provide needed stability and safety for child).

As for the permissive exception, Amanda must show that termination is unnecessary because the children are in the legal custody of a relative. Iowa Code § 232.116(3)(a); *see A.S.*, 906 N.W.2d, at 476. She does not meet that burden. The record does not show that relatives have legal custody of R.V. or C.S. And besides, the willingness of those relatives to step in as caregivers does not outweigh the need for permanency in this case. *Id.*

**Delayed Permanency**. As an alternative argument, Amanda seeks more time to reunite with her three children. A court may defer permanency only if the need for removal "will no longer exist at the end of the additional six-month period."

Iowa Code § 232.104(2)(b); *see In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). No such optimistic prognosis emerges from this record. Amanda did not use the fourteen months that she had to improve her parenting prospects. We thus deny the request for more time.

## II.     Montez's Appeal

Montez contends that the juvenile court should have placed his daughter, R.V., in a guardianship with her paternal grandmother rather than terminating his parental rights. He asserts that he has a good relationship with his mother and, as R.V.'s guardian, she would preserve R.V.'s connection with Montez despite his life sentence in prison.

We appreciate the interest Montez has shown in maintaining a relationship with his daughter from behind bars. But we see no advantage to creating a guardianship with the paternal grandmother rather than allowing her to adopt R.V. Adoption offers R.V. greater stability, and the grandmother would have the option to facilitiate contact with Montez if appropriate for the child. *See generally In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). On these facts, termination of Montez's parental rights was in R.V.'s best interests.

**AFFIRMED ON BOTH APPEALS**.